## BOWEN *v.* THE STATE.

1. The substantial averments of the indictment are: "The plaintiff in error represented himself to be a practicing physician; that he had restored sight to Ned Williams, a blind man; that he represented to the prosecutor his house and residence were infected with poison; that the poison was in the bed occupied by the grand-daughter of the prosecutor; that said grand-daughter was the person poisoned. He proposed to find the poison and remove it for a valuable consideration to be paid to him by the prosecutor; the prosecutor, relying upon these false and fraudulent representations and believing them to be true, paid to the plaintiff in error the sum of $22.00," etc., etc. *Held,* that the indictment is sufficient to sustain a conviction under section 701 of the Code, supported by the facts of this case.

    Code cited: section 4701.

2. SAME *Same. Same.* It is insisted that the false pretenses complained of are not such as would be credited by a person of ordinary caution. The court say: "We are aware that such language is used in some of the cases passed upon by this court. This restriction upon the

operation of the statute is not, in our opinion, authorized by its language. If ordinary caution is to have its influence in the application of the law, it must be such ordinary caution as we may naturally and reasonably expect to exist under the circumstances and conditions in life of the person practiced upon. The question is, What caution is he capable of exercising?

:3. SAME. *Same.* *Legerdemain.* It is insisted there is no proof showing the falsity of the claimed superhuman power of the pretender, and therefore he cannot be convicted. The court say: "We reply, the negative is not susceptible of actual proof, but is of that class of things which bear to the intelligent mind the conviction clear and conclusive of its own falsehood"

4. SAME. *Same.* *Evidence.* It was error not to withdraw the prosecutor's evidence to the effect that one of the patients of the pretender had told him that he was not benefitted, when the prisoner had stated to the prosecutor that he had cured him, etc., as evidence of his skill.

FROM SHELBY.

Appeal from the Criminal Court. JOHN D. ADAMS, Judge.

B. M. BURROW for Bowen.

ATTORNEY-GENERAL HEISKELL for State.

TURNEY, J., delivered the opinion of the court.

The substantial averments of the indictment are: "The plaintiff in error represented himself to be a practicing physician; that he had restored sight to Ned Williams, a blind man; that he represented to the prosecutor his house and residence were infected with poison; that poison was in the bed occupied by the grand-daughter of the prosecutor; that said grand-daughter was the person poisoned. He proposed to find the poison and remove it for a valuable consid-

eration to be paid to him by the prosecutor; the prosecutor relying upon these false and fraudulent representations, and believing them to be true, paid to the plaintiff in error the sum of $22 00," etc., etc.

The proof is, the plaintiff in error went to the house of the prosecutor in company with a confederate and said he was a "Chickasaw Doctor," going about doing good; said "somebody seems to be sick here;" prosecutor replied, "yes, my grand-daughter;" plaintiff in error looked at her and said she was poisoned, that she had poison in her bed, etc., "but you do not believe it, you are hard to believe; I will show you how a person can poison another without coming near them." He took a hat and put it on a table, walked back to the back part of the room and told the prosecutor to raise the hat and see how many pieces of paper were under it; prosecutor raised the hat and there were none; plaintiff in error told him to put the hat down again, he did so, and was told to look, which he did, and found four pieces of paper under it. This was repeated, and the next time three pieces of paper were found. These things were done several times.

He then said there is poison about your house and I can find it, and told prosecutor to take up a brick out of the hearth, which he did, and found a little ball mixed with hair. Plaintiff in error then went to the bed of the grand-daughter and asked for a pair of scissors, told the grand-daughter to cut a hole in the tick and feel amongst the feathers, she did so, and found a ball similar to the one found in the

hearth; the prisoner said this was the poison in her bed that was affecting her. He then said he was doing good among the colored people; that he had five hundred cases; that he had just been over to see old Ned Williams and had cured him of blindness; the prosecutor knew Ned Williams and knew he was blind. The confederate said, "yes, I was over there with him, and Ned Williams is all right." Prisoner said to prosecutor, "old man, you have enemies; you do not know the white people are better friends of yours than the colored people; your own people are your enemies; you have had bad luck, have you not?" Prosecutor said he had lost his wife and his hogs. Prisoner said, "yes, your wife was poisoned; that he could give me a thing that would tell me when my enemies were about, if I fed it and talked to it right;" prosecutor asked what he would charge; prisoner said ten dollars, which was given. Prisoner then took out a bottle filled with a white fluid; the bottle had a rag tied to one side of the neck, a small substance in the rag. Prisoner said this is a "Jack," he can talk, you will have to feed him out of the bottle. The way he talks is by knocking three knocks for yes, two for no; he asked "Jack" if prosecutor had enemies, Jack answered yes, etc. Prisoner told prosecutor he would have to cross the ten dollars with two for luck, this was done; prisoner said, "old man, feed Jack and talk to him right, and he will talk for you."

Prisoner's visits, representations and *legerdemain* were repeated until he had obtained $74.00.

Bowen v. State.

The indictment is based on section 4701 of the Code, the act of 1829, in the words: " Every person who by any false pretense, or by any false token or counterfeit letter, with intent to defraud another, obtains from any person personal property, or the signature of any person to any written instrument, the false making of which is forgery, shall, on conviction, be imprisoned in the penitentiary not less than three or more than ten years."

The prisoner was convicted, sentenced, and has appealed to this court.

To the first objection, that the averments of false pretenses in the indictment are negatived thereby, we cannot agree. The indictment, under the old and technical rules of pleading in criminal causes, might be subject to criticism, but not so under the present practice in Tennessee.

It contains every element necessary to constitute the crime, distinctly notifies the defendant of the offense with which he is charged, and clearly negatives the truth of the assigned false pretenses, upon the credit of which the money was obtained.

It is insisted that the false pretenses complained of were not such as would be credited by a person of ordinary caution. We are aware that such language is used in some of the cases passed upon by this court. This restriction upon the operation of the statute is not, in our opinion, authorized by its language.

The object and purpose of the law is, to protect all *persons* alike, without regard to the single capacity to exercise ordinary caution, a condition of mind very

4.—VOL. 9.

difficult of definition, and certainly of very different meaning under the various circumstances that may surround the person proposed to exercise it. Thus, a child entrusted with a watch, money or other valuable, to be borne to an artificer, merchant or friend, might be induced, by the most flimsy and self-apparent falsehoods, to part with it: still, if these representations were of a character to secure the credit of the child and deprive it of the possession of the goods, however absurd such representations might seem to the more mature and experienced, yet it would be such false pretenses by one person to another, as deprived that other of his personal property, as contemplated by the letter and spirit of the law.

A man of the country, unacquainted with the vices incident to a city, may be and often is cheated out of his effects by tricks and means that would not for a moment deceive him who was accustomed to the society in which such things so frequently occur, although he may have less strength of mind than the former.                    .

If "ordinary caution" is to have its influence in the application of the law, it must be such ordinary caution as we may naturally and reasonably expect to exist under the circumstances and conditions of life of the person practiced upon. The question is, what caution is he capable of exercising?

The main object of the law is to protect the weak against the strong, the inexperienced and unsuspecting against the experienced and vicious.

There can be no. rule of law caring more for the

Bowen v. State.

protection of the wise and cultivated than for the foolish and unlettered.    It is not required that one should exercise more caution and prudence than nature has given him.    Here we have the negro who has but recently had conferred upon him the right of citizenship; every presumption is that he is ignorant, we know he is naturally superstitious, and it is apparent from the whole record and almost every part of it, that the prisoner had completely studied his nature and knew exactly at what points in his character and natural disposition to attack him.    He represents himself as the peculiar and especial friend of the negro race, giving his whole time to the promotion of its welfare, health and happiness, and to prove to the satisfaction of his intended victim the truth of his professions of power, he resorts to sleight of hand performances and executes them with such adroitness as to elude detection of the trick by the artless negro, and would doubtless have eluded the most enlightened. These things impressed the prosecutor as miracles; he at once gave credit to the performer as inspired, and was in consequence victimized.

It is insisted there is no proof showing the falsity of the claimed superhuman power of the pretender, and therefore he cannot be convicted.

We reply, the negative is not susceptible of actual proof, but is of that class of things which bears to the intelligent mind the conviction clear and conclusive of its own falsehood.    The false pretenses of power would not have deceived the strong or cultivated mind for the reason already given, but that they did

deceive an ignorant and superstitious negro is as certain as the simplest mathematical demonstration.

The negro was a "person" contemplated by the law; he exercised such ordinary caution as nature had endowed him with. He required proofs of the imposter as to his capacity to perform wonders, to the extent of drawing from him the complaint that he was hard to believe, and he only believed after frequent repetitions.

It is objected that the prosecutor stated that sometime after he was victimized he went to see Ned Williams, who told him he had not been restored to sight by the prisoner, etc., etc.

The failure to withdraw this statement from the jury was error, for which we are constrained to reverse.